IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:23-CV-81309

HIPPOCRATES HEALTH INSTITUTE, INC.,

    Plaintiff,

v.

THE STRAUB GROUP INSURANCE &
FINANCIAL SERVICES, LLC and THOMAS G.
STRAUB,

    Defendants.

## COMPLAINT

Plaintiff Hippocrates Health Institute, Inc. ("Plaintiff") sues defendant The Straub Group Insurance & Financial Services, LLC ("The Straub Group") and Thomas G. Straub ("Thomas") (collectively, the "Defendants"), and alleges the following:

## THE PARTIES

1. Plaintiff is a nonprofit corporation organized and existing under the laws of the State of Florida with its principal place of business located in Palm Beach County, Florida.

2. The Straub Group is a limited liability company organized and existing under the laws of the State of New Jersey with its principal place of business located at 525 Rt. 73 North, Suite 301, Marlton, NJ 08053. The Straub Group's agent for service of process is Thomas G. Straub, 525 Rt. 73 North, Suite 301, Marlton, NJ 08053.

3. Thomas is an individual who is a citizen of the State of New Jersey residing at 15 Colmar Road, Cherry Hill, NJ 08002.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5. This Court has jurisdiction over Defendants pursuant to Fla. Stat. § 48.193 because they committed tortious acts in this state, breached a contract in this state by failing to perform acts required by the contract to be performed in this state, and caused injury to Plaintiff within this state while Defendants were engaged in solicitation or service activities within this state.

6. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## BACKGROUND

7. Plaintiff is the leading global center for health, wellness, and longevity – for nearly 70 years.

8. From its 55-acre facility in West Palm Beach, Plaintiff caters to guests from all over the world who benefit from health and nutritional counseling, non-invasive remedial and youth-enhancing therapies, state of the art spa services, inspiring talks on life principles and a daily buffet of enzyme-rich, organic meals.

9. Brian and Anna Maria Clement have served as co-directors of Plaintiff since approximately 1980.

10. The Straub Group, which is principally owned and managed by Thomas, purports to offer investment services, financial advice, and sell annuities to the general public.

11. Beginning in approximately 2007 and continuing through the present date, Thomas has acted in a fiduciary capacity for Plaintiff in assisting Plaintiff with the purchase and

management of tens of millions of dollars of annuities and other investments. All such short term investments and annuities were purportedly under the management of Defendants.

12. On August 11, 2022, Defendants sent a letter to Plaintiff's auditors/accountants which purported to identify certain annuities and short-term investments being managed by Defendants for the benefit of Plaintiff.

13. In that August 11, 2022 letter, Defendants identified a total of $5,614,416.94 in short-term investment monies being managed for the benefit of Plaintiff:

| | |
|---|---|
| Short Term Investment | $ 1,669,944.44 |
| Short Term Investment | $ 571972.50 |
| Short Term Investment | $ 1,522,500.00 |
| Short Term Investment | $ 1,850,000.00 |

14. In approximately February 2023, Plaintiff contacted Thomas in an effort to obtain detail on the annuities and short term investment accounts being managed by Defendants. Defendants, however, ignored the request and did not provide any of the requested information.

15. In late March 2023, Thomas visited Plaintiff's facility in West Palm Beach, FL and stayed for a period of days. During that stay, Thomas met with various of Plaintiff's representatives and provided details (i.e., bank names, account numbers, account statements) on Plaintiff's annuity purchases being managed by Defendants.

16. During the meeting, Plaintiff's representatives asked Thomas for the same type of information/details with respect to any short-term investment accounts being managed by Defendants. At the time, Thomas represented that such short-term accounts were being held with Bank of America or Citibank, that he did not have the information pertaining to such with him in Florida, and that he would provide the details upon his return to New Jersey.

17. In early April 2023, Plaintiff's representatives again followed up with Thomas

regarding the details of Plaintiff's short-term investment accounts. In response, Thomas represented that he was working on the information which would be provided shortly.

18. Between April and June 2023, Plaintiff's representatives repeatedly pressed Thomas for an answer with respect to the status of Plaintiff's short-term investments (by phone and e-mail). Plaintiff received only excuses in response – sick staff, death of relatives, vacations, etc. – and never received an actual answer with respect to its investments.

19. In early July 2023, rather than divulge the details of the short-term investment accounts, Thomas instead e-mailed Plaintiff two (2) Excel spreadsheets purporting to identify the total dollar amount of short-term investments under Defendants' management – approximately $6,536,712.42 as of June 30, 2023:

**THE STRAUB GROUP, LLC**

Hippocrates Health Institute
Short Term Investments
As of 06/30/2023

| Issue Date | Interest Rate | Initial Premium | Current Value |
|---|---|---|---|
| 02/03/2012 | 3% | $300,000 | $415,270.13 |
| 03/16/2012 | 3% | $300,000 | $415,270.13 |
| 04/18/2012 | 3% | $400,000 | $554,046.53 |
| 07/24/2015 | 3% | $300,000 | $376,126.46 |
| Total | ------- | $1,300,000 | $1,760,713.25 |
| 12/06/2017 | 3% | $500,000 | $589,131.67 |
| Total | ------- | $500,000 | $589,131.67 |
| 05/12/2020 | 5% Yrs. 1& 2 3% Thereafter | $500,000 | $567,787.50 |
| 05/20/2020 | 5% Yrs. 1& 2 3% Thereafter | $300,000 | $340,672.50 |
| 06/08/2020 | 5% Yrs. 1& 2 3% Thereafter | $300,000 | $340,672.50 |
| 07/15/2020 | 5% Yrs. 1& 2 3% Thereafter | $200,000 | $220,500.00 |
| 08/24/2020 | 5% Yrs. 1& 2 3% Thereafter | $150,000 | $165,375.00 |
| Total | ------- | $1,450,000 | $1,635,007.50 |
| 05/21/2021 | 4% Yrs. 1&2 3% Thereafter | $350,000 | $378,560.00 |
| Total | ------- | $350,000 | $378,560.00 |

DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

**THE STRAUB GROUP, LLC**

Hippocrates Health Institute
Short Term Investments Continued
As of 06/30/2023

| Issue Date | Interest Rate | Initial Premium | Current Value |
|---|---|---|---|
| 11/09/2021 | 3% | $500,000 | $525,000.00 |
| 11/09/2021 | 3% | $1,000,000 | $1,102,400.00 |
| Total | --------- | $1,500,000 | $1,627,400.00 |
| 4/22/2022 | 3% | $500,000.00 | $545,900.00 |
| Total | --------- | $500,000.00 | $545,900.00 |

20. According to Thomas, these short-term investments were essentially annuities that had matured and purportedly been placed by Defendants in a "Suspense Account" (which was previously explained in writing by Thomas as being "held for the benefit of the Institute [Plaintiff] until such time more permanent investment strategies are evaluated and implemented at some future date").

21. Although Defendants produced the above Excel spreadsheets, they failed to provide any backup, details, or other evidence that Plaintiff's monies were actually being kept in such accounts.

22. Following receipt of the above spreadsheets, Plaintiff's representatives (who at all times were located in Florida) called Thomas (on July 7, 2023) to reiterate the need for access to bank records and other proof of available funds with respect to the short-term investment accounts.

23. At the time, Thomas agreed to provide full access to the bank accounts by July 14, 2023. Plaintiff sent Thomas an e-mail that afternoon confirming the substance of the phone call.

24. Thomas failed to provide access to the aforementioned bank accounts (or endeavor to provide account statements) by July 14, 2023 or any date thereafter.

25. On July 17, 2023, Plaintiff sent a formal written demand for Defendants to deliver the $6,536,712.42 being held by Defendants in short-term investment accounts and turn over all bank statements/information concerning the investments. Defendants ignored that letter.

26. In early August 2023, Plaintiff (through its co-director Brian Clement) sent a further written demand to Defendants to deliver the $6,536,712.42 being held by Defendants in short-term investment accounts and turn over all bank statements/information concerning the investments.

27. Following receipt of the August 2023 demand letter, Thomas called Brian Clement to discuss the letter. During that call, Thomas admitted that he does not have the money and stated that any further communications should go through his attorney.

28. Notably, at the time that Plaintiff was pushing for answers on its short-term investments, Thomas (who is 83 years old) appears to have been divesting himself of his assets and transferring such to his wife, son, and/or other family members.

29. Indeed, on approximately June 15, 2023, Thomas executed a deed whereby he transferred his share of ownership in his residence to his wife, Gloria M. Straub.

30. Upon information and belief, Thomas does not actually hold any licenses as a certified financial planner or otherwise with respect to financial planning/investment advice. Rather, at all material times, Thomas relied upon and utilized his son (Brett T. Straub) and his company (The Straub Group Advantage) to skirt around Thomas' own lack of licensure.

31. Plaintiff has made numerous demands on Defendants for the return of its short-term investment monies but, to date, Defendants have ignored those demands.

32. All conditions precedent to the filing of this action have been performed, occurred,

or been waived.

## COUNT ONE:  CONVERSION

33. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 32 as if fully alleged herein.

34. Defendants are in wrongful possession of approximately $6,536,712.42 of specifically-identifiable funds belonging to Plaintiff that were purportedly in short-term 'suspense' accounts being managed by Defendants for Plaintiff's benefit.

35. Defendants have wrongfully asserted dominion or control over Plaintiff's property and rights in a manner inconsistent with Plaintiff's ownership and entitlement thereto.

36. As a direct and proximate result of Defendants' conversion of Plaintiff's property, Plaintiff has sustained substantial damages in an amount to be determined at trial.

37. Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, preliminary and permanent injunctive relief, prejudgment interest, and such other relief as the Court deems just and proper.

## COUNT TWO: CIVIL THEFT

38. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 32 as if fully alleged herein.

39. Defendants knowingly converted $6,536,712.42 in specifically identifiable funds (which were being held in specific short-term accounts for Plaintiff's benefit) belonging to Plaintiff.

40. Defendants' actions constitute civil theft pursuant to Fla. Stat. § 772.11 by virtue of their violation of Fla. Stat. § 812.014 (theft).

41. As a result of Defendants' civil theft, Plaintiff is statutorily entitled to treble damages, attorneys' fees, and costs as provided for in Fla. Stat. § 772.11.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory, special, and treble damages (in the amount of $19,610,137.26), prejudgment interest, post-judgment interest, costs, reasonable attorneys' fees, and such other relief as the Court deems just and proper.

### COUNT THREE:  UNJUST ENRICHMENT

42. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 32 as if fully alleged herein.

43. Plaintiff provided a direct benefit to Defendants by placing approximately $6,536,712.42 in Plaintiff's assets under Defendant's care/management.

44. Defendants unjustly enriched themselves by retaining the $6,536,712.42 under their management and failing to tender such monies to Plaintiff upon demand.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, consequential damages, prejudgment interest, post-judgment interest, costs, and such other relief as the Court deems just and proper.

### COUNT FOUR: BREACH OF FIDUCIARY DUTY

45. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 32 as if fully alleged herein.

46. Plaintiff entrusted Defendants, acting as financial/investment advisors, with tens of millions of dollars of Plaintiff's monies to invest in annuities and certain short-term investments.

47. Given this relationship of trust, Defendants owed a fiduciary duty of loyalty and due care to Plaintiff.

48.     Defendants breached their fiduciary duty by, among other things, refusing to account to Plaintiff for approximately $6,536,712.42 of Plaintiff's monies and converting such monies for their own use.

49.     As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiff suffered substantial damages, the full amount of which will be established at trial of this matter.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, consequential damages, prejudgment interest, post-judgment interest, costs, and such other relief as the Court deems just and proper.

Dated: September 22, 2023.

DESOUZA LAW, P.A.
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (954) 603-1340
DDesouza@desouzalaw.com

By: /s/ Daniel DeSouza, Esq.
    Daniel DeSouza, Esq.
    Florida Bar No.: 19291